IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 24-cv-02750-PAB-SBP

DANIA RUIZ-PARAMO,

      Plaintiff,

v.

AROMA360, LLC,

      Defendant.

---

**ORDER**

---

This matter comes before the Court on Plaintiff's Renewed Motion for Default Judgment and Request for Express Finding of Proper Service [Docket No. 25].

## I. BACKGROUND[1]

Defendant Aroma360, LLC ("Aroma360") is a limited liability company incorporated in the state of Florida with its principal place of business located at 2058 NW Miami Ct., Miami, Florida.  Docket No. 1 at 2, ¶ 5.  On December 25, 2023, plaintiff Dania Ruiz-Paramo purchased a gift card from Aroma360 with a face value of $1,000.  *Id.* at 3, ¶ 13.  Aroma360 sent this gift card to Ms. Ruiz-Paramo by email.  *Id.*  The gift card was a "general use pre-paid card" or "store pre-paid card" as defined by the Credit Card Accountability, Responsibility, and Disclosure Act of 2009 ("CCARDA") and the Electronic Fund Transfer Act ("EFTA") of 1978, 15 U.S.C. §§ 1693(a)–(r).  *Id.*, ¶ 14.

---

[1] The Clerk of Court entered default on December 17, 2024.  Docket No. 13.  As a result, the well-pled allegations in plaintiff's complaint, Docket No. 1, are deemed admitted.  *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

Regulation E under the CCARDA prohibits the sale of gift cards and general-use prepaid cards that expire within five years.  *Id.* at 2, ¶ 11; *see also* 12 C.F.R. § 1005.20(e).  The gift card Ms. Ruiz-Paramo purchased expired on March 31, 2024, less than five years after Aroma360 issued the card.  Docket No. 1 at 3, ¶ 15.  Ms. Ruiz-Paramo's gift card is less valuable than it would have been had the card not contained an expiration date within five years.  *Id.* at 4, ¶ 19.

On October 4, 2024, Ms. Ruiz-Paramo filed suit in this case, bringing one claim of violating the CCARDA.  *Id.* at 3–4, ¶¶ 12–20.  Ms. Ruiz-Paramo seeks statutory damages of $1,000, "[r]eimbursement of her costs for the purchase of the gift card," and attorney's fees.  *Id*. at 4–5.  On November 4, 2024, Ms. Ruiz-Paramo served Kathy Collester,[2] supposedly the director of compliance for Eduard Kotlyarov, Jr., Aroma360's registered agent, at 433 Plaza Real Suite 375, Boca Raton, Florida.  Docket No. 6.  On December 17, 2024, the Clerk of Court entered default against Aroma360.  Docket No. 13.  That same day, Ms. Ruiz-Paramo filed a motion for default judgment.  Docket No. 14.  On May 27, 2025, the Court denied the motion for default judgment without prejudice, finding that Ms. Ruiz-Paramo did not establish that she properly served Aroma360.  Docket No. 18.  Specifically, the Court found that service was improper under Federal Rule of Civil Procedure 4(h)(1)(B) because Ms. Collester was not identified as an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process.[3]  *Id.* at 9.  On October 6, 2025, Ms.

---

[2] Exhibit B to Docket No. 25 is a LinkedIn webpage for Ms. Collester that indicates her first name is spelled "Kathi" and that she is the Director of Compliance for Aroma 360, LLC.  Docket No. 25-2.

[3] The Court also found that service was improper under Federal Rule of Civil Procedure 4(e), Florida law, and Colorado law.  Docket No. 18 at 9-10.

2

Ruiz-Paramo filed a new motion for default judgment, asserting that she has now properly served Aroma360.  Docket No. 25.

## II.  LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55.  First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a).  Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b).  *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

The decision to enter default judgment is "committed to the district court's sound discretion."  *Olcott*, 327 F.3d at 1124 (citation omitted).  In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits."  *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted).  "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party."  *Id.*  It serves to protect a plaintiff against "interminable delay and continued uncertainty as to his rights."  *Id.* at 733.  When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment."  *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence.  *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("a workable system of justice requires that litigants not be free to appear at their pleasure.  We therefore must hold parties and their attorneys to a reasonably high

standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2023 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Id*. A court need not accept conclusory allegations. *Moffett v. Halliburton Energy Servs., Inc.,* 291 F.3d 1227, 1232 (10th Cir. 2002). Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

To obtain a default judgment for a sum certain, the plaintiff must show the following by affidavit. First, that the party in default is (1) not a minor or an incompetent person, (2) is not in military service, and (3) has not made an appearance. D.C.COLO.LCivR 55.1(a)(1). Second, that the sum is certain or the sum can be made certain by computation. D.C.COLO.LCivR 55.1(a)(2). Additionally, the plaintiff must

4

submit a proposed form of judgment that shows (1) the party in favor of whom judgment shall be entered, (2) the party against whom judgment shall be entered, (3) the sum certain amount consisting of the principal amount, prejudgment interest, and the rate of post judgment interest, and (4) the sum certain of attorney fees.  D.C.COLO.LCivR 55.1(b).

## III.  ANALYSIS

Before entering default judgment, the Court must determine whether it has subject matter jurisdiction over the case and personal jurisdiction over the defendant. *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").

Ms. Ruiz-Paramo brings one claim under the CCARDA, a federal law.  Docket No. 1 at 3-4, ¶¶ 12-20.  Ms. Ruiz-Paramo alleges that she purchased a $1000 gift card from defendant on December 25, 2023, which constitutes a "store pre-paid card" under the CCARDA.  Docket No. 1 at 3, ¶ 14.  The card had an expiration date of less than five years, in violation of the CCARDA and its implementing regulation, Regulation E. *Id.* at 2, ¶ 11.  Pursuant to 28 U.S.C. § 1331, the "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  The Court therefore has subject matter jurisdiction over Ms. Ruiz-Paramo's claim under 28 U.S.C. § 1331 because the claim arises under federal law.

Ms. Ruiz-Paramo bears the burden of establishing personal jurisdiction.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  Ms. Ruiz-Paramo can satisfy her burden by making a *prima facie* showing.  *Dudnikov v. Chalk & Vermilion Fine Arts,*

*Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court will accept the well-pled allegations of the complaint as true in determining whether Ms. Ruiz-Paramo has made a *prima facie* showing that personal jurisdiction exists.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).  However, "[c]onclusory allegations as to the transaction of business, devoid of further factual support, are insufficient to establish a good faith basis for personal jurisdiction over a defendant."  *Ryuunosuke Takeshige v. Rich Board, LLC*, No. 20-cv-1262-WJM-KLM, 2021 WL 2351036, at *2 (D. Colo. June 9, 2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117 (2014)).  If the presence or absence of personal jurisdiction can be established by reference to the complaint, the court need not look further.  *AST Sports Sci.*, 514 F.3d at 1057.  The plaintiff may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant.  *Id.*

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process."  *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)).  The Colorado long-arm statute, Colo. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent permitted by the Constitution, so the jurisdictional analysis here reduces to a single inquiry of whether jurisdiction offends due process.  *See Dudnikov*, 514 F.3d at 1070; *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Personal jurisdiction comports with due process where a defendant has minimum contacts with the forum state and where

6

those contacts are such that assuming jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Minimum contacts may be established under the doctrines of general jurisdiction or specific jurisdiction.  *Howarth v. TCER, LLC*, 20-cv-03230-PAB-KMT, 2021 WL 4775270, at *2 (D. Colo. Oct. 13, 2021).

Furthermore, proper service is a jurisdictional prerequisite to litigation.  *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit.").  Without proper service, the Court lacks personal jurisdiction over a defendant.  *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992).

Federal Rule of Civil Procedure 4(h) governs service on limited liability companies.  *See Avus Designs, Inc. v. Grezxx, LLC*, 644 F. Supp. 3d 963, 973 (D. Wyo. 2022) ("The Court analyzes adequacy of service of process on an LLC in the context of Fed. R. Civ. P. 4(h), which establishes service of process for a corporation, partnership, or association.").  Rule 4(h)(1)(B) provides that a plaintiff may serve process on an unincorporated association "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process."  Fed. R. Civ. P. 4(h)(1)(B); *see also Howarth*, 2021 WL 4775270, at *3.  "The purpose of Rule 4(h) is to ensure that when a litigant serves process on a corporation, the process is delivered to a person of sufficient rank and control in the corporation such that the court can be reasonably assured that those corporate officials responsible for responding to the suit will actually be apprised of its pendency."  *Howarth*, 2021 WL 4775270, at *3 (quoting *Inversora*

7

*Murten SA v. Energoprojekt Holding Co*., No. 06-cv-02312-MSK, 2009 WL 179463, at

*4 (D. Colo. Jan. 22, 2009)).

In the alternative, a plaintiff may serve a company "in the manner prescribed by

Rule 4(e)(1) for serving an individual."  Fed. R. Civ. P. 4(h)(1)(A).  Rule 4(e)(1) allows

service to be made "following state law" for either the state where the district court is

located or where service is made.  Fed. R. Civ. P. 4(e)(1).  Because Ms. Ruiz-Paramo

effectuated service in Florida, she may demonstrate that her service was proper under

Colorado or Florida law.  *See* Docket No. 25-1.

Ms. Ruiz-Paramo argues that service was proper under Rule 4(h)(1)(B) because

she served an agent authorized by appointment to receive service of process.  Docket

No. 25 at 4.  Ms. Ruiz-Paramo cites the affidavit of the process server, Enil Cerrano,

which states that the registered agent of Aroma 360 is "Eduard Kotlyarov, Jr., Esq."

Docket No. 25-1.  Records from the Florida Department of State Division of

Corporations confirm that Mr. Kotlyarov is Aroma360's registered agent.  *See* Div. of

Corps., Fla. Dep't of State, *Search Records: Corporations Limited Liability Companies,*

*Limited Partnerships, and Trademarks*, https://dos.fl.gov/sunbiz/search/ (last visited May

28, 2026).  Ms. Ruiz-Paramo, however, did not serve Mr. Kotlyarov.  Instead, she

served Kathy Collester at the address listed for Mr. Kotlyarov.  Docket No. 25-1.  Thus,

the question is whether service on Ms. Collester is effective to serve Aroma360.  Ms.

Ruiz-Paramo served Ms. Collester the first time she attempted to serve Aroma360.  *See*

Docket No. 6.  When ruling on her first motion for default judgment, the Court found that

Ms. Ruiz-Paramo did not sufficiently demonstrate that she properly served Aroma360

because Mr. Cerrano's affidavit of service merely stated that Ms. Collester was the

8

director of compliance for Mr. Kotlyarov, but did not identify her as "an officer, a managing or general agent, or any other agent authorized by appointment or law to receive service of process."  Docket No. 18 at 9.

The affidavit of service submitted in support of this motion states that, on August 5, 2025, Mr. Cerrano attempted to serve Mr. Kotlyarov at 1295 Northeast 5th Avenue, Boca Raton, FL 33432.  Docket No. 25-1.  Mr. Cerrano knocked on the door, but there was no answer.  *Id.*  Mr. Cerrano saw no sign of human activity inside and left his contact information at the door.  *Id.*  Later that day, Mr. Cerrano received a phone call from the "registered agent," who stated that the house at Northeast 5th Avenue is not his primary residence, and that he was "confused why the summons wasn't directed to his office located at 433 Plaza Real Boca Raton, FL 33432, Suite 375."  *Id.*  Although the "registered agent" is not identified by name in reference to the telephone call, the affidavit of service earlier identifies Mr. Kotlyarov as the "registered agent."  *Id.*  Mr. Kotlyarov advised Mr. Cerrano that somebody should be available at his office to accept service between the hours of 9:00 a.m. and 5:00 p.m.  *Id.*  On August 14, 2025, Mr. Cerrano went to 433 Plaza Real Boca Raton, FL 33432, Suite 375 and served Ms. Collester.  *Id.*  The affidavit of service asserts that Ms. Collester stated that she "was authorized to accept court documents."  *Id.*  Thus, unlike Mr. Cerrano's first affidavit of service, the new affidavit of service identifies Ms. Collester as an agent authorized by appointment to receive service of process.  Accordingly, Ms. Ruiz-Paramo properly served Aroma360 under Rule 4(h)(1)(B).

Ms. Ruiz-Paramo, however, inaccurately asserts that the Court's March 27, 2025 order denying default judgment identified the service of process issue as "the sole

impediment." Docket No. 25 at 4. In reality, the Court noted that "proper service is a jurisdictional prerequisite to litigation," and thus denied the motion for default judgment. Docket No. 18 at 10 (citation omitted). But even if service is proper, the Court still cannot enter default judgment unless it has personal jurisdiction over Aroma360. *See Dennis Garberg & Assocs.*, 115 F.3d at 772. General jurisdiction extends to "any and all claims" brought against a defendant, including claims that have no relation to the forum state. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (citation omitted). A court may exercise general jurisdiction only when a defendant is "essentially at home" in the state. *Id.* For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG*, 571 U.S. at 137 (citation omitted). "Courts routinely apply *Daimler's* general jurisdiction rule to limited liability companies." *Allstate Ins. Co. v. Cruz*, No. 24-cv-00933-NYW-CYC, 2025 WL 2337093, at *4 (D. Colo. Aug. 13, 2025) (collecting cases). The complaint asserts that Aroma360 is registered in Florida and has its principal place of business in Florida. Docket No. 1 at 2, ¶ 5. Ms. Ruiz-Paramo does not state any facts that would render Aroma360 "essentially at home" in Colorado. Accordingly, the Court finds that Aroma360 is not subject to general jurisdiction in Colorado.

Specific jurisdiction is present only if the lawsuit "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*, 582 U.S. 255, 262 (2017). That is, "[a] plaintiff's injury must 'arise out of or relate to' the defendant's forum contacts." *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir.

2020) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985)).  In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Bristol-Myers*, 582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)).

The specific jurisdiction analysis is two-fold.  First, a court must determine whether a defendant has such minimum contacts with Colorado that the defendant "should reasonably anticipate being haled into court" here.  *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  Within this inquiry, the court must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King*, 471 U.S. at 472, and whether plaintiff's claim arises out of or results from "actions by . . . defendant . . . that create a substantial connection with the forum State."  *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 109 (1987) (internal quotations omitted).  "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'"  *Ford Motor Co.*, 141 S. Ct. at 1025 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984)).  "They must show that the defendant deliberately 'reached out beyond' its home – by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there."  *Id*. (citation omitted).  Second, if a defendant's actions create sufficient minimum contacts, the court must consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice."  *Asahi*, 480 U.S. at 105.  The court considers several factors as part of this analysis, including: (1) the burden on the

11

defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

Ms. Ruiz-Paramo argues that the Court has specific jurisdiction over Aroma360 because Aroma360 marketed, sold, and issued gift cards in Colorado. Docket No. 25 at 6. However, the only factual support Ms. Ruiz-Paramo provides is a screenshot of the email containing her gift card. Docket No. 1-2. The only allegation in the complaint related to marketing states that "[t]his Court has jurisdiction over Defendant because Defendant has specifically marketed, sold and issued gift cards in this jurisdiction." Docket No. 1 at 1, ¶ 3. Thus, the claim that Aroma360 marketed gift cards to Colorado residents is "vague and conclusory, and does not set forth a colorable basis for the Court's exercise of personal jurisdiction." *Ryuunosuke Takeshige*, 2021 WL 2351036, at *2. The only basis for jurisdiction supported by specific factual allegations is that Aroma360 sold Ms. Ruiz-Paramo—a Colorado citizen—a gift card. The fact that the gift card was sent via email indicates that it was purchased online. *See* Docket No. 1-2.

Courts have been divided on whether an out-of-state defendant is subject to specific jurisdiction for selling products via an online website to consumers in a specific state. *Compare Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1095 (9th Cir. 2023) (holding that selling products on Amazon to Arizona residents created sufficient connections to Arizona for the exercise of personal jurisdiction); *NBA Props., Inc. v. HANWJH*, 46 F.4th 614, 624 (7th Cir. 2022) (holding that selling an infringing product on

12

Amazon and shipping it to an Illinois address created sufficient connections to Illinois for the exercise of personal jurisdiction); *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 171-72 (2d Cir. 2010) (holding that selling a product online to New York buyers created sufficient connections to New York for the exercise of personal jurisdiction), *with Bros. & Sisters in Christ, LLC v. Zazzle, Inc.*, 42 F.4th 948, 953 (8th Cir. 2022) (holding that selling a product online to a Missouri consumer was not sufficient to establish personal jurisdiction); *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783 (5th Cir. 2021) (holding that selling a product online to Louisiana residents was not sufficient to establish personal jurisdiction when the website did not specifically target Louisiana).  Thus, the Ninth, Seventh, and Second Circuits have found that selling a product online can be sufficient to establish personal jurisdiction, while the Eighth and Fifth Circuit have found that something more than mere online sales is required.

The Tenth Circuit has not yet decided whether specific jurisdiction can be established through online sales.  However, courts in this District have found that, in cases involving online sales, "minimum contacts can be established on the basis of the substantial or regular flow of sales from a non-resident company to residents of the forum state."  *SEBO Am., LLC v. Red Vacuums LLC*, No. 23-cv-0116-WJM-SBP, 2024 WL 964816, at *3-4 (D. Colo. Mar. 6, 2024) (collecting cases).  For example, in *Otter Prods., LLC v. Big Birds,* LLC, No. 19-cv-00626-DME-KLM, 2019 WL 13102793, at *1-2 (D. Colo. Aug. 9, 2019), the court found that plaintiff sufficiently alleged that defendants had minimum contacts in Colorado based on allegations that (1) defendants "have made substantial and regular sales of infringing products bearing Plaintiffs' trademarks to Colorado," including "at least fifty such sales" occurring over a

13

three month period; and (2) defendants "continue to regularly sell a high volume of other infringing products bearing Plaintiffs' trademarks into Colorado."  (internal alterations omitted).  In *Otter Prod., LLC v. Phone Rehab, LLC*, No. 19-cv-00206-RM-MEH, 2019 WL 4736462, at *4 (D. Colo. Sept. 27, 2019), *report and recommendation adopted*, 2019 WL 6888276 (D. Colo. Dec. 18, 2019), the court found that plaintiffs established specific personal jurisdiction over defendants based on allegations that defendants sold and shipped 341 infringing products to Colorado consumers via Amazon for over a year, in addition to shipping over 1,000 other products to Colorado during the same time period.  By contrast, in *Red Vacuums*, the court found that SEBO failed to establish that defendant had sufficient minimum contacts in Colorado because SEBO's evidence only showed that defendant received seven online orders from consumers in Colorado, including six orders from plaintiff's counsel, and defendant only shipped one order to Colorado.  *Red Vacuums*, 2024 WL 964816, at *5.  The court found that "seven orders" was distinguishable from the "high volume" of sales in *Big Birds* and *Phone Rehab*.  *Id*.  Similarly, in *SEBO Am., LLC v. Mega Mart Warehouse LLC*, No. 22-cv-02898-PAB-KAS, 2024 WL 1257534, at *4-6 (D. Colo. Mar. 25, 2025), this Court found that four orders placed on Amazon were insufficient to establish minimum contacts in Colorado.

The Court finds that Ms. Ruiz-Paramo has not provided sufficient jurisdictional allegations to establish that Aroma360 has minimum contacts in Colorado.  Although Ms. Ruiz-Paramo alleges in the complaint that Aroma360 markets and sells gift cards to Colorado residents, *see* Docket No. 1 at 1, ¶ 3, the only specific allegation that Ms. Ruiz-Paramo makes is that she bought a gift card.  Docket No. 1-2.  Just as the seven

orders were insufficient to establish minimum contacts in *Red Vacuums*, the single order here is also insufficient to establish minimum contacts. *See Red Vacuums*, 2024 WL 964816, at *5.

Ms. Ruiz-Paramo may be able to plead facts demonstrating that the Court has specific personal jurisdiction over Aroma360, but she has not done so at this stage. Accordingly, the Court will deny the request for default judgment without prejudice for failure to plead sufficient facts showing personal jurisdiction. *See United States v. Noell*, No. 22-cv-02538-PAB-SP, 2023 WL 4204669, at *5 (D. Colo. June 27, 2023) (denying default judgment motion without prejudice for failure to plead sufficient personal jurisdiction allegations).

## IV.  CONCLUSION

Therefore, it is

**ORDERED** that Plaintiff's Renewed Motion for Default Judgment and Request for Express Finding of Proper Service [Docket No. 25] is **DENIED without prejudice**.

DATED June 9, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge

15